**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

TIMOTHY MOONEY and
TERRY MOONEY,

    Plaintiffs,

v.                                                                CASE NO: 8:13-cv-3213-T-26AEP

PHILIP HENKIN, M.D.,
HENKIN NEUROSURGERY, P.A.,
MEDTRONIC, INC., and
MEDTRONIC SOFAMOR DANEK, USA, INC.,

    Defendants.
_____/

## O R D E R

Before the Court is Plaintiff's Motion to Remand, Motion for Costs and Memorandum of Authorities in Support Thereof (Dkt. 11), and The Medtronic Defendants' Memorandum in Opposition to Plaintiffs' Motion to Remand. (Dkt. 23). After careful consideration of the submissions of the parties, the applicable law, and the entire file, the Court concludes the motion should be granted.

### BACKGROUND

This removed case involves the "off-label" promotion and usage of Infuse® Bone Graft (Infuse®), a liquid bone graft product classified by the Food and Drug Administration (the FDA) as a medical device. Infuse® was designed, manufactured, and

marketed by Medtronic, Inc.'s division named Medtronic Sofamar Danek USA, Inc. (Medtronic).[1]  As a Class III device under the Medical Device Amendments of 1976 (the MDA), 21 U.S.C. § 360c, *et seq.*, Infuse® was approved by the FDA pursuant to its Premarket Approval (the PMA) process.

Plaintiff Timothy Mooney underwent spinal surgery on November 7, 2011,[2] performed by a neurosurgeon, Dr. Philip Henkin of Henkin Neurosurgery, P.A.,[3] who used Infuse® in an off-label manner.  Infuse® is approved by the FDA only for lumbar surgery through the abdomen, which is considered an "anterior approach," and only when accompanied by an "LT-Cage™," a cylinder used to insert the Infuse® into the spine.  It is not approved by the FDA for any lumbar surgery performed through the back or side of the body, which is considered a "posterior approach," or cervical spine surgery, or essentially any back surgery, that does not include use of the LT-Cage™.  Medtronic, nevertheless, promoted and marketed to physicians the off-label use for posterior approach lumbar and cervical fusions without the use of the LT-Cage™.

---

[1]  Both Defendants will be referred to as Medtronic.  Neither Medtronic, Inc., nor Medtronic Sofamor Danek USA, Inc., are citizens of the state of Florida for purposes of diversity.

[2]  See Complaint at para. 248.

[3]  Dr. Philip Henkin is a resident of Brandon in Hillsborough County, Florida. Henkin Neurosurgery, P.A. is a business located in Brandon in Hillsborough County, Florida.

The complaint consists of nine state law causes of actions.  The first six counts are directed against Medtronic for fraudulent misrepresentation, strict products liability for failure to warn, design defect, and misrepresentation, and strict products liability based on negligence and breach of express warranty.  The seventh count seeks damages against the physician, and the eighth count against his P.A., for medical negligence.  The ninth count names all Defendants for a recovery of loss of consortium on behalf of Mrs. Mooney.

Defendants Medtronic removed this action based on both federal question and diversity jurisdiction.  Medtronic asserts that the state law claims are based on the MDA which creates a substantial federal interest in the regulation of the PMA-approved Class III medical devices, thereby giving rise to federal question jurisdiction.  With respect to diversity jurisdiction, Medtronic argues that the physician and his P.A. are fraudulently joined, based on the Plaintiffs' inability to establish a cause of action against them and the inadequacy of presuit notice compliance.  Plaintiffs seek remand on both the lack of federal question and diversity jurisdiction.  For the following reasons, the Court finds that it lacks subject matter jurisdiction on both grounds.

## REMOVAL

### *Fraudulent Joinder*

The burden of proving assertions of fraudulent joinder in a case removed on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1441(b) lies with the removing party.  Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997) (citing Cabalceta v.

Standard Fruit Co., 883 F.2d 1553, 1562 (11th Cir. 1989)). The burden is a heavy one. Crowe, 113 F.3d 1536, 1538 (citing B, Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. Unit A 1981)). Fraudulent joinder may be determined in two ways, either (1) by showing there is no possibility the plaintiff can establish a cause of action against the resident defendant or (2) by showing that the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court. Crowe, 113 F.3d at 1538 (citing Cabalceta, 883 F.2d at 1561). A third category of fraudulent joinder is called "fraudulent misjoinder" which applies "where a diverse defendant is joined with a nondiverse defendant as to who there is no joint, several, or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998).[4] The plaintiff's pleadings as they exist at the time of removal provide the canvas on which these determinations are made. Crowe, 113 F.3d at 1538 (citing B, Inc., 663 F.2d at 549).[5] Affidavits and depositions may also be considered. Id. Both the factual allegations and any uncertainties about the applicable law must be resolved in the light most favorable to the plaintiff. Id.

Under the first type of fraudulent joinder, "[i]f there is a possibility that a state court would find that the complaint states a cause of action against any of the resident

---

[4] See also Bollea v. Clem, 937 F. Supp. 2d 1344, 1350 (M.D. Fla. 2013).

[5] See also Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380-81 (11th Cir. 1998).

defendants, the federal court must find that the joinder was proper and remand the case to the state court." Tillman v. R.J. Reynolds Tobacco, 340 F.3d 1277, 1279 (11th Cir. 2003) (reiterating standard from Tillman v. R.J. Reynolds Tobacco, 253 F.3d 1302, 1305 (11th Cir. 2001)). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." Tillman, 253 F.3d at 1305. "[F]ederal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380-81 (11th Cir. 1998) (quoting Crowe, 113 F.3d at 1538). The defendant must show by clear and convincing evidence that the plaintiff cannot establish a cause of action against the resident defendant. Henderson v. Washington Nat. Ins. Co., 454 F.3d 1278, 1281 (11th Cir. 2006).

*Federal Question*

The type of federal question jurisdiction implicated in this case is a "special and small category" of cases considered as "arising under" jurisdiction with its origins in state rather than federal law. Gunn v. Minton, ___ U.S. ___ , 133 S.Ct. 1059, 1064-65, 185 L.Ed.2d 72 (2013) (citing Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 699, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006)). The Gunn Court reiterated the four-part inquiry established in Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing., 545 U.S. 308, 125 S.Ct. 2362, 162 L.Ed.2d 257 (2005), used to ascertain

whether a substantial federal issue exists warranting the exercise of federal jurisdiction. "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn, 133 S.Ct. at 1065.  All four prongs must be satisfied.

### ANALYSIS

#### *Fraudulent Joinder*

The issue is whether Medtronic has demonstrated by clear and convincing evidence that there is no possibility that Plaintiffs can establish any cause of action against Dr. Henkin and his P.A.  The Court finds that Medtronic has not met its burden.

Plaintiffs allege that Dr. Henkin was negligent (1) in selecting Infuse® because Mr. Mooney was not a proper candidate,[6] (2) in applying it in a manner expressly prohibited,[7] and (3) in failing to properly obtain Mr. Mooney's informed consent for the

---

[6] In paragraphs 366(a) and 376(a), the Complaint alleges that Dr. Henkin "negligently utilized the BMP product on a patient who was not a proper candidate for such product."  BMP stands for bone morphogenetic proteins.  See Complaint at para. 59.

[7] In paragraphs 366(b) and 376(b), the Complaint alleges that Dr. Henkin "negligently utilized the BMP product in an off-label manner with and around interbody cages placed through a posterior, transforaminal approach in which BMP-2 sponge construct was substituted for autologous bone graft within the interbody cage." In paragraphs 366(c) and 376(c), the Complaint alleges that Dr. Henkin "negligently failed to use the surgical components as a system in direct disregard for the approved labeling for the product that indicates in bold underlined formatting: 'These components *must* be used as a system.  The Infuse® Bone Graft component *must not* be used without the LT-Cage™ Lumbar Tapered Fusion Device component.'"

off-label usage of Infuse® in view of the problems that had been reported to Medtronic.[8]

While some of Plaintiffs' claim against the surgeon and his P.A. may appear to contradict claims against Medtronic[9] in that it is alleged that Medtronic concealed from Dr. Henkin the problems with the off-label usage it promoted, it is plausible that Medtronic may have engaged in a pattern of concealment and yet a surgeon would have known about the risks. See Worrix v. Medtronic, Inc., 2013 WL 6834719, at * 4-5 (E.D. Ky. Dec. 23, 2013) (granting remand based on fraudulent joinder where plaintiff alleged both that Medtronic suppressed information about the dangers of Infuse® and the surgeon should have known of those dangers). Alternative pleading is acceptable in both Florida and federal courts,[10]

---

[8] In paragraph 39 of the Complaint, Plaintiffs allege that Mr. Mooney "would not have consented to be treated with the off-label use of Infuse® had he known of or been informed by Medtronic or by his spine surgeon of the true risks of the off-label use of Infuse®." Paragraph 78 alleges that "[w]hen a physician chooses to use a medical device in an off-label manner, he or she must inform the patient of the off-label nature of the surgery and the expected risks and benefits of such off-label use, and obtain the patient's informed consent to such use."

[9] Florida's civil rules of procedure, as well as the federal rules, permit pleading in the alternative, which may result in inconsistent pleadings. See Innovative Material Sys., Inc. v. Santa Rosa Utilities, Inc., 721 So.2d 1233 (Fla.Dist.Ct.App. 1998) (citing Florida Rule of Civil Procedure 1.110(g) for the principle that inconsistent claims may be alleged in a single pleading and noting that a party may assert mutually exclusive claims in the same pleading); Fla.R.Civ.P. 1.110(g) ("A party may also state as many separate claims or defenses as that party has, regardless of consistency and whether based on legal or equitable grounds or both."); Fed.R.Civ.P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

[10] See footnote 9 above.

and, in any event, Plaintiffs claim the lack of informed consent and the surgeon's negligence in determining whether Mr. Mooney was a proper candidate.

Medtronic's reliance on Torrence v. Pfizer, 2007 WL 788368 (M.D. Fla. Mar. 14, 2007), is misplaced. Torrence involved a patient who committed suicide after taking Zoloft, a medicine prescribed by certain healthcare defendants and manufactured and marketed by Pfizer. The case was remanded because the complaint failed to allege that plaintiff had satisfied the presuit requirements of Chapter 766. The district court reasoned that because the plaintiff did not even attempt to comply with the presuit notification with respect to the prescribing healthcare defendants, the plaintiff could not have possibly stated a medical malpractice claim against the healthcare defendants. The complaint in the instant case, however, alleges compliance with presuit notice requirements at paragraphs 365 and 374.[11]

With respect to Medtronic's claim that specific presuit notice requirements were not met, on February 7, 2014, the Court entered an order at docket 28 denying the Henkin Defendants' motion to dismiss based on the same argument. The 2013 amendments to section 766.102(5)(A)(1) of the Florida Statutes are not applicable to this case. The argument that Plaintiffs failed to obtain a sufficient expert opinion, for the reasons stated in that order, is also unpersuasive here. In removing this case and contesting the motion

---

[11]  For the same reasons, Medtronics' reliance on Lederman v. Howmedia Osteonics Corp., 2013 WL 1460036 (M.D. Fla. Apr. 10, 2013), also misses the mark.

for remand, Medtronic has failed to establish by clear and convincing evidence that Plaintiffs' presuit notice compliance falls short.

### *Federal Question*

The parties agree that the first two factors of the Grable test are met in this case—a federal issue is necessarily raised and actually disputed. Assuming this Court accepts this premise, the third prong presents the more difficult determination— whether a substantial federal question exists sufficient to warrant the exercise of this Court's limited jurisdiction. The parties cite two cases that have ruled on this issue in similar situations involving Medtronic and Infuse®. See Goade v. Medtronic, Inc., 2013 WL 6237853 (W.D. Mo. Dec. 3, 2013) (granting remand, finding that none of the four prongs were satisfied), and Jenkins v. Medtronic, Inc., 2013 WL 6172234 (W.D. Tenn. Nov. 21, 2013) (denying remand, finding that Congress expressly prescribed regulation of Class III devices through the MDA, which provides that any state requirement to the device "different from, or in addition to" a federal requirement is preempted). Another case has been decided and aligns with the Missouri district court. See Dillon v. Medtronic, Inc., 2013 WL 37759 (E.D. Ky. Jan. 6, 2014) (granting remand, finding that none of the categories for arising under jurisdiction were met).

This Court finds the Missouri and Kentucky cases compelling. As courts of limited jurisdiction, federal courts may hear cases "arising under the Constitution, laws, or treaties of the United States," but this statutory grant confers a "more limited power"

than the constitutional meaning of arising under.  Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 807-08, 106 S Ct. 3229, 3232, 92 L.Ed.2d 650 (1986) (referring to 28 U.S.C. § 1331).  As noted in Grable, "questions of jurisdiction over state-law claims require 'careful judgments,' about the 'nature of the federal interest at stake.'"  Grable, 545 U.S. at 317 (citations omitted).  The right to removal must be strictly construed.  Scimone v. Carnival Corp., 720 F.3d 876, 882 (11th Cir. 2013) (quoting Russell Corp. v. American Home Assurance Co., 264 F.3d 1040, 1050 (11th Cir. 2001)).  In cases involving considerable doubts as the instant one, "there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand."  Scimone, 720 F.3d at 882 (quoting Russell Corp. 264 F.3d at 1050).[12]

It is therefore **ORDERED AND ADJUDGED** that Plaintiff's Motion to Remand (Dkt. 11) is **GRANTED.**  Plaintiff's Motion for Costs (Dkt. 11) is **DENIED**.  This case is hereby remanded to the state court for lack of subject matter jurisdiction for all further proceedings.  In view of this ruling, Defendants Medtronic's Motion to Dismiss (Dkt. 24) is denied as moot without prejudice to being renewed before the state court.  The Clerk is hereby directed to close this case after effectuating remand.

---

[12]  With respect to taxing costs, the Court finds that the removing party did not lack an objectively reasonable basis for seeking removal.  See Martin v. Franklin Capital Corp., 546 U.S. 132, 141, 126 S.Ct. 704, 711, 163 L.Ed.2d 547 (2005) (referring to 28 U.S.C. 1447(c)).

**DONE AND ORDERED** at Tampa, Florida, on February 9, 2014.

       s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

<u>**COPIES FURNISHED TO**</u>:
Counsel of Record